868 So.2d 297 (2004)
John E. BROWN and Lovie Brown, Plaintiff-Appellee
v.
BROOKSHIRE'S GROCERY COMPANY d/b/a Super 1 Foods, et al., Defendant-Appellant.
No. 38,216-CA.
Court of Appeal of Louisiana, Second Circuit.
March 12, 2004.
*299 David H. Nelson, Monroe, for Appellant.
Richard J. Gallot, Jr., Ruston, Bobby L. Culpepper, Jonesboro, for Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, J.
In this slip and fall case, the defendant, Brookshires Grocery Company d/b/a Super One Foods ("Brookshires"), appeals a trial court judgment in favor of the plaintiff, John E. Brown. The trial court awarded the plaintiff $15,000 in general damages and $1888.94 in special damages for injuries sustained after he slipped and fell in the defendant's store. For the following reasons, we affirm.

FACTS
On April 3, 1999, at approximately 7:30 a.m., the plaintiff, John E. Brown ("Brown"), entered the Super One Foods ("Super One") grocery store in Ruston, Louisiana, to purchase groceries. As Brown was walking through the check-out area toward the grocery shelves, he slipped on spilled dishwashing liquid and fell.
At trial, Chris Turner ("Turner"), an assistant manager at Super One, testified that prior to the accident, a patron in an electronic motorized shopping cart, Alice Smith ("Smith"), was standing in the check-out line to purchase her items. He testified that after making her purchases, Smith began to put her items in bags and place them in her cart, which is customary for the patrons of Super One. Turner testified that he noticed that dishwashing detergent was leaking from the basket of Smith's cart and he removed the upside-down bottle containing the liquid and replaced the pop-top cap, which had been released. Turner testified that he notified the store director, Michael D. Terry ("Terry") of the spill and asked Terry to retrieve a "wet floor" sign. Turner further testified that he "guarded" the spill, by positioning himself between the spill and anyone entering the store, while Terry left to retrieve the sign.
Despite Turner's testimony that the accident occurred "right after" he discovered the spill, he testified that he witnessed several patrons pass him to leave the store after they had finished checking out at other counters and he saw at least one person enter the store and proceed along the "Wall of Values"[1] before the accident. However, he testified that he never saw Brown enter the store or approach the area of the spill. In fact, he stated that he did not see Brown until after the accident. *300 Turner admitted that while the majority of customers entered the grocery store and traveled along the "Wall of Values," to access the grocery shelves, it was not uncommon for patrons to proceed through one of the check-out aisles after entering the store, as Brown had done. According to Turner, the time of day when the accident occurred is not a particularly busy time for the grocery store.
Terry, the store director, confirmed Turner's testimony that there was very little traffic in the store at the time of the accident. Terry testified that he did not witness the accident because he left the area to retrieve a "wet floor" sign. He testified that when he returned to the area, approximately forty-five seconds later, Brown already had fallen and he was getting up from the floor. Terry testified that because the tile in the area of the spill was white and the spilled liquid was yellow, the contrast between the two colors made the spill very noticeable. He also confirmed Turner's testimony that it was not unusual for patrons to proceed to the merchandise area through the check-out aisles. Terry testified that there were no signs or other obstructions to discourage patrons from walking through the check-out aisles to reach the merchandise area.
J.C. Knight, a cookie salesman, testified that at the time of the accident, he was talking to Turner about some sales promotions. He stated that as he was talking to Turner, he noticed Brown walk in the front door at a brisk pace without ever looking down at the floor. He testified that Turner was standing between the front door and the spill, but facing the other check out counters when Brown walked past him, brushed Turner's shoulder and slipped in the spilled liquid. He also testified that the liquid was orange in color.
Brown's wife, Lovie Brown, testified with regard to her husband's injuries and his physical condition after the accident. While she appeared to be somewhat confused as to which arm he had injured, she testified that the arm was swollen and Brown had to wear a splint for a period of time. She testified that Brown still experiences some pain and weakness in his wrist which prevents him from lifting anything heavy. According to Mrs. Brown, the injury has impaired Brown's ability to work with his tools and to do maintenance work at apartments owned by his brother, activities that he enjoyed prior to the accident. Mrs. Brown also testified that because her husband suffered a stroke in January 2000, his memory is not as good and he gets confused about some of the details with regard to the accident and his injuries. Mrs. Brown offered no real substantive testimony with regard to her loss of consortium claim, other than to state that Brown was irritable about not being able to do "certain things" after the accident.
We note that Brown's testimony appears to have been largely error-prone due to his confusion and lack of memory. However, the trial court did not find, and nothing in this regard suggests to this Court, that he was purposely coloring his testimony in an attempt to be disingenuous. The trial court noted in its ruling its impression that Brown's memory had been affected by an unrelated illness, and thus the court did not cite much of his testimony in reaching its conclusions. Also testifying at the trial was Angelo Julian, a longtime friend of Brown. Julian was not present at the time of the accident and was only able to offer vague testimony with regard to the plaintiff's complaints of pain and discomfort caused by the injury.
Medical records jointly introduced at trial reveal that Brown presented to the *301 emergency room at Lincoln General Hospital in Ruston after he slipped and fell in Super One on April 3, 1999. He complained of pain in his left wrist and swelling of the forearm above his left wrist. An x-ray revealed that Brown had suffered a non-displaced fracture to the distal end of the radius of his left wrist, with significant soft-tissue swelling of his left forearm. He was placed in a wrist splint and prescribed pain medication. Brown was instructed to follow up with an orthopedist within four to five days.
On April 8, 1999, Brown was seen by Dr. Richard Ballard, an orthopedist at the Green Clinic in Ruston. Because Dr. Ballard noticed that Brown was still experiencing moderate swelling of his left wrist and forearm, he advised Brown to continue to wear the wrist splint and to return to the clinic in two weeks for a new x-ray. When Brown returned to the clinic on April 22, 1999, Dr. Ballard noted some improvement to Brown's left wrist. He also noted that Brown complained of "quite a bit" of back pain that began shortly after the accident. Dr. Ballard detected spasms in Brown's lower back, but did not find any neurological deficit. He recommended that Brown wear the wrist splint for an additional three weeks and diagnosed him with a lumbar strain, for which he prescribed medication.
On May 13, 1999, Brown returned to the Green Clinic for a follow-up visit. Dr. Ballard's notes reflect that while Brown's condition had improved, he still had some stiffness in his wrist and fingers. Dr. Ballard discontinued the wrist splint, but advised Brown to begin vigorous occupational therapy.
On May 14, 1999, Brown reported to the Ruston Outpatient Physical Therapy Service for an occupational therapy evaluation and plan of care. The occupational therapist concluded that Brown's primary deficits were decreased range of motion and increased pain with the use of his left upper extremity. Brown attended three physical therapy sessions in accordance with the plan of care, after which it was noted that he had a significant improvement in his range of motion, strength, endurance and functional abilities. Brown was last seen by Dr. Ballard on June 3, 1999. In his final report, Dr. Ballard noted that Brown had responded well to his physical therapy sessions. He released Brown to continue his normal activities. Although Brown's wrist had minimal swelling and pain, Dr. Ballard did not anticipate that Brown would have any permanent impairment as a result of his injury.
Following the presentation of evidence, the court rendered judgment against Brookshires, finding it 100% at fault, and awarding plaintiffs general damages in the amount of $15,000 and medical expenses of $1,888.94.[2] Brookshires now appeals, urging that the trial court erred in finding its employees negligent in causing the accident, in failing to find comparative fault on the part of Brown or the patron whose dishwashing liquid had spilled and by abusing its discretion in the award of general damages.

DISCUSSION
LSA-R.S. 9:2800.6 states in pertinent part:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss *302 sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless such finding is clearly wrong. Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880; Rosell v. ESCO, 549 So.2d 840 (La.1989). In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one in light of the evidence in the record. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Stobart, supra.
The trial court concluded, and we agree, that the dishwashing liquid spill presented an unreasonable risk of harm to Brown, that the risk of harm was reasonably foreseeable and that Brookshires had actual notice of the spill. Defendant does not appear to dispute these findings on appeal.
The trial court further found that Brookshires failed to exercise reasonable care in its effort to protect patrons, particularly the plaintiff, from the spill. It is this finding that is the basis of Brookshires' argument on appeal. Specifically, Brookshires argues that it exercised reasonable care when one of its employees, Turner, recognized that the spill was present. According to Brookshires, Turner immediately stopped the spill, he sent someone to retrieve a "wet floor" sign and a mop, and he stood in front of the spill to warn store patrons. Brookshires contends that based on these acts by its employee and the fact that the spill was cleaned up within three to four minutes, the trial court was clearly wrong in finding that it was negligent.
A merchant is required to exercise reasonable care to protect its patrons, to keep the premises safe from unreasonable risks of harm and to warn persons of known dangers. Ward v. ITT Specialty Risk Services, Inc., 31,990 (La. App.2d Cir.6/16/99), 739 So.2d 251. Whether measures taken by a merchant to prevent conditions that might cause a customer to fall are reasonable must be determined in light of the circumstances of each case. Hardman v. Kroger Co., 34,250 (La. App.2d Cir.12/6/00), 775 So.2d 1093.
In the present case, Brookshires' employees were aware of a known danger, namely, the dishwashing liquid spill in an area heavily trafficked by patrons either entering or leaving the store. Hence, the measures which should have been taken to prevent patrons from the known hazard were heightened. While we do not conclude that dutiful vigilance by one employee over the spill would not satisfy that duty, the evidence in this case clearly shows that Turner was somewhat distracted and not particularly alert to the patrons approaching the spill. This was not a particularly *303 busy time in the store. The evidence indicates that while standing guard over the spill, Turner was engaged in a conversation with Knight while both of them stood between the front door and the spill. Furthermore, Turner testified that he never saw Brown during the time Brown traveled approximately 25 feet from the front door to the area of the spill. Thus, we cannot say that the trial court was manifestly erroneous in concluding that Turner was less than attentive, and thus negligent, in his attempt to keep customers from stepping in the spill.
With regard to Brookshires' argument that the trial court erred in failing to assign some percentage of fault to either Brown or the patron whose dishwashing liquid spilled on the floor, we find this assignment to be entirely without merit. As the trial court noted, there is no indication that Brown saw the spill as he approached. Patrons may reasonably assume that the aisles and floors in a store are clean and clear for passage and their duty to keep a proper lookout is diminished when distracted by the store's merchandise. Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992). The evidence reveals that Brown was entering the grocery store and looking straight ahead toward the checkout counter where Turner and Knight were standing. Furthermore, there is no evidence which allows us to conclude that Brown should have seen the spill. Therefore, we cannot conclude from the evidence in this record that the trial court was manifestly erroneous in finding that Brown was not at fault in causing the fall.
We also fail to identify in this record any evidence which proves any fault on the part of a female patron whose dishwashing liquid allegedly spilled. No one witnessed her place the dishwashing bottle in her cart. While Brookshires has taken the position that the patron caused the spill when she placed the bottle in her cart upside down, there is no evidence that she even placed a bottle of dishwashing liquid in her cart. Brookshires assumption is based solely on its general policy that its customers bag their own groceries. We, like the trial court, are unable to determine whether the top became dislodged while being handled by the check-out clerk before it was placed in the cart or whether on this particular occasion the patron even placed her own groceries in the cart. Absent any such evidence, we cannot conclude that the trial court erred in not assessing the female patron with a percentage of fault in causing the plaintiff's accident.

DAMAGES
Brookshires contends the trial court's award of $15,000 in general damages is excessive. It argues that if Brown is entitled to any recovery, the maximum amount should be $8,500. We disagree.
In assessing general damages in tort cases, much discretion is left to the judge or jury. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Jones v. Brookshires Grocery Company, 33,683 (La.App.2d Cir.8/23/00), 774 So.2d 200.
*304 In the present case, the trial court found that although most of Brown's back and wrist pain had been resolved within a couple of months, Brown was left with some residual pain and a weakened grip. The trial court also noted that the injury kept Brown from enjoying some of his pre-accident activities, such as working with his tools and at his brother's apartments. In light of the medical records detailing Brown's complaints of pain and the extent of his injuries, the trial court awarded him $15,000 in general damages.
Before a trial court award for damages can be questioned as excessive, the reviewing court must first consider the individual circumstances of the case. The reviewing court must determine whether the amount of the award can be supported under an interpretation of the evidence viewed in a light most favorable to the plaintiff which reasonably could have been made by the factfinder. Hammock ex rel. Thompson v. Louisiana State Medical Center in Shreveport, 34,086 (La.App.2d Cir.11/1/00), 772 So.2d 306 citing Powell v. RTA, 96-0715 (La.6/18/97), 695 So.2d 1326. As stated above, only after an articulated analysis of the facts discloses an abuse of discretion, is it appropriate for a reviewing court to resort to prior awards in similar cases. O'Brien v. Remington Arms Co., Inc., 601 So.2d 330 (La.App. 2d Cir.1992). For an award to be considered excessive and an abuse of discretion, it must be so high in proportion to the seriousness of the injury that it shocks the conscience. Jones, supra.
After reviewing the record in its entirety, we cannot say that the general damages award in this case is abusively high. Other than presenting examples of lower general damage awards in cases where generically similar facts existed, defendant has not urged any argument on appeal to persuade this Court that such a comparison of prior awards should be undertaken.

CONCLUSION
For the reasons set forth above, the judgment of the district court is hereby affirmed. Costs of this appeal are assessed to Brookshires Grocery Company d/b/a Super One Foods.
AFFIRMED.
NOTES
[1] The documents in the record refer to this portion of the store as both the "Wall of Values" and the "Aisle of Value." For purposes of this opinion, we will refer to this portion of the store as the "Wall of Values."
[2] Although the trial court rendered judgment in favor of both John and Lovie Brown, it specifically found that Lovie Brown had failed to present evidence to support her loss of consortium claim, and no monetary amount was awarded for that claim.