BROWN, C.J.
hA retired Shreveport police officer, Marshall Nelson, filed this action against Shreveport Police Corporal Janice Dailey,[1] Chief Jim Roberts, and The City of Shreveport, seeking general and specific damages for battery, false arrest, false imprisonment, and, as to the City, violations of 42 U.S.C. § 1983.
Chief Roberts was dismissed by means of a partial summary judgment. The trial court rendered judgment on February 8, 2005, awarding general damages to Nelson and ordering Cpl. Dailey and the City to pay the amount of $15,000 for battery, false arrest, and false imprisonment. The trial court apportioned 33%% fault to Nelson, reducing his recovery to $10,000. The court then awarded Nelson special damages in the amount of $593.30.[2] The trial court rejected Nelson’s independent federal claims under 42 U.S.C. § 1983 against the City which pertained to its procedures in the hiring and training of officers. Further, the trial court denied Nelson’s request for special damages related to counseling he received from his minister and spiritual advisor, Reverend Aaron Do-bynes. Nelson has appealed the apportionment of fault, the dismissal of his 42 U.S.C. § 1983 claims, and the amount of damages awarded. Defendants have also appealed the trial court’s judgment on the issues of liability and damages. For the reasons set forth below, we amend in part to reduce the percentage of fault allocated to Nelson, and, as amended affirm.

\9Facts

On March 20, 2003, at approximately 9:00 p.m., Nelson, a retired Shreveport police officer with 23 years of service,[3] was eastbound on Greenwood Road near its intersection with Jewella Avenue. Nelson pulled off of Greenwood Road onto the south end of the Westwood Shopping Center to talk on his cell phone. He parked his vehicle but kept his parking lights illuminated. At approximately 9:15 p.m., Corporal Janice Dailey, also eastbound on Greenwood Road, observed Nelson’s stationary vehicle and decided to investigate. Corporal Dailey noticed that the vehicle bore a public license plate. At this time, Nelson was the Chief of Police for Southern University; however, we note that the university campus was located across town from where this incident occurred. Corporal Dailey pulled to the side of Nelson’s ear but did not immediately activate her mobile video recording system. What transpired before the recording system was activated is in dispute.
According to Nelson, Cpl. Dailey inquired, “Who do you work for?” Nelson responded, “Why?” Corporal Dailey then ordered Nelson out of his car. Nelson *1115 testified that he got out of his car with his hands out of his pockets.
| .¡Corporal Dailey, however, testified that she rolled her window down and greeted Nelson by stating, “Hi, how are you” and in what she described as a “conversational” tone, asked Nelson, “Sir, tell me who you are and who you work for.” Nelson responded, “What do you mean who do I work for? I ain’t gonna tell you (expletive).”
After this initial exchange, Cpl. Dailey activated the mobile video recording system; however, because the camera was directed to the front of Cpl. Dailey’s vehicle, it did not cover the incident at the side of Nelson’s vehicle. The recording, however, does provide an audio of the incident, which lasted for seven minutes, from 9:16 p.m. to 9:23 p.m. While Cpl. Dailey and Nelson do not dispute the dialogue which is heard on the tape, they strongly disagree as to the physical actions of each other during the seven minute encounter.
Corporal Dailey testified that Nelson got out of his car, placed both hands in his pockets, and continued to keep his hands in his pockets in spite of her commands. She also stated that Nelson did not properly place his hands on his car and spread his feet as ordered. Furthermore, within the first minute of the encounter, Nelson “jerked back and clenched his fist” at Cpl. Dailey. The officer stated that she hit Nelson on the back of his thighs with her impact weapon, a PR24, in response to his aggressive actions. She did a pat-down search and found no weapon. Even so, she handcuffed Nelson and forced him into the back seat of her cruiser.
Nelson denied that he “jerked back,” or displayed a “clenched fist.” Instead, Nelson testified that he attempted to retrieve his identification |4before complying with Cpl. Dailey’s request to place his hands on his car.' According to Nelson, Cpl. Dailey struck his thighs without provocation. Corporal Dailey then locked Nelson in handcuffs and used a “pain compliance technique” on Nelson’s hand to move him into the backseat of the police car.
Lieutenant Lawrence D. Thomas arrived at the scene and recognized Nelson as a retired ranking officer of the Shreveport Police Department. When asked, Cpl. Dailey told Lt. Thomas that she did not have any charges on Nelson. Lt. Thomas ordered Cpl. Dailey to release Nelson, and after a Fire Department medical team cleared him of any immediate health risk, Nelson left the scene.
The trial court concluded the following from listening to the recording. Corporal Dailey’s tone was not “conversational,” but was harsh and offensive. Corporal Dailey used her PR24 to strike Nelson within 35 seconds of Nelson exiting his vehicle. Nelson, uttered no profanity during the first four and a half minutes of the tape, and Nelson cursed only once thereafter. Nelson told. Corporal Dailey, before being struck, that he was a retired police officer, he had identification, and he was not resisting her. The court also found there to be no indication from the tape that Nelson exhibited any aggressive behavior toward Cpl. Dailey. The court found that Corporal Dailey was unable to articulate any crime that had occurred or was about to occur and had handcuffed and detained Nelson in the back of her police car without probable cause.
, |sThe trial court concluded that because Nelson was parked adjacent to closed businesses in a high crime area at night Cpl. Dailey was legally justified in inquiring of Nelson his name, address, place of employment, and an explanation of his actions in accordance with La. C. Cr. P. article 215.1(A) and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Likewise, the act of conducting a pat-down or frisk of Nelson was justified under the *1116 circumstances. However, the act of striking Nelson was unreasonable, unjustified, and constituted an excessive use of force under Shreveport Police departmental procedures and, a battery under Louisiana Law. Corporal Dailey’s act of placing Nelson in handcuffs was unjustified under the circumstances, and her use of a pain compliance technique (twisting Nelson’s fingers and hand while he was handcuffed) was unnecessary. Nelson’s arrest and imprisonment in the back of Cpl. Dailey’s police vehicle was in violation of La. C. Cr. P. art. 213 and departmental procedures inasmuch as Cpl. Dailey did not have probable cause to believe Nelson had committed any offense whatsoever, and therefore Cpl. Dailey committed the tortious offense of false arrest/imprisonment of Nelson.
The trial court found that Rev. Dobynes was not a Ph. D. level psychologist or a M.D. level psychiatrist, so he was not qualified to pinpoint, with specification, whether all of the psychological injuries described by Nelson were caused by the incident of March 20, 2003, and was therefore not entitled to reimbursement for the spiritual counseling he rendered to Nelson, who was a member of his church.
| (¡The court concluded that there was no evidence presented at trial supporting the claims made by Nelson against the City referenced in litigation as “independent negligence” and “federal claims” which pertain to allegations of negligence on the part of the City in the training and supervision of Cpl. Dailey. Therefore, the trial court denied Nelson’s 42 U.S.C. § 1983 claims.
The trial court awarded Nelson $15,000 in general damages against Cpl. Dailey and the City. Notwithstanding the finding of battery, false arrest, and false imprisonment, the trial court held that Nelson, due to his extensive experience in law enforcement, should have shown Cpl. Dailey more courtesy and cooperation. For this reason, the trial court found comparative fault on the part of Nelson in his initial responses to Cpl. Dailey and assessed him with one-third of the fault. The trial court awarded special damages in the amount of $593.30 which represented treatment by a chiropractor and cash lost when Nelson’s wallet was dropped to the ground.

Discussion

Findings of False An-est/Excessive Force

Obviously, Nelson, with his hands cuffed behind his back and locked in the backseat of a police car, was imprisoned. Equally apparent is that the officer’s striking of Nelson with the PR24, as well as her handcuffing and forcing him into the back of the police cruiser, constitute the intentional application of force. However, police officers are always armed with dangerous weapons and may legitimately employ reasonable force to [7perform them duties and preserve order. Their use of force is privileged so long as the force used is not unreasonable or excessive.
Whether the force used is reasonable depends on the totality of the facts and circumstances in each case. The degree of force employed is a factual issue, and the trial court’s factual findings are entitled to great weight. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977), Harris v. Carter, 33,951 (La.App. 2d Cir.10/04/00), 768 So.2d 827; Evans v. Hawley, 559 So.2d 500 (La.App. 2d Cir.1990).
Factors to be considered in making a determination of whether the force used was reasonable under the circumstances include: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of ar *1117 rest or subduing the arrestee; the physical size, strength and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. Kyle, supra; Evans, supra. One of the factors taken into consideration when determining whether a police officer used reasonable or unreasonable force is whether the plaintiff was intoxicated, belligerent, offensive, or uncooperative. See Crawford v. Maryland Casualty Co., 169 So.2d 612 (La.App. 2d Cir.1964).
Nelson told Cpl. Dailey that he was a retired police officer and attempted to show her some identification. Corporal Dailey had him turn around and put his hands on the car. Cpl. Dailey then struck him on the back of his legs with the PR24 and patted him down. She found no Isweapons nor did she know of any charges to make against Nelson. While the trial court found an investigatory stop to be proper, the court concluded that delivering multiple strikes with a PR24 to the back of Chief Nelson’s thighs while his hands were on the hood of his car was an excessive use of force. We agree with the trial court and can specifically identify the time when Nelson was struck with the PR24 as the point in time that Cpl. Dailey exceeded her authority. Considering Cpl. Dailey’s statement to her supervisor that she had no charges against Nelson, the trial court concluded that the handcuffing and use of the “pain compliance technique” was improper and excessive. Specifically, she told Lt. Thomas, “I don’t have any charges on him.... He’s just acting a fool.”
A review of the audio recording unquestionably supports the trial court’s findings. A copy of the transcription is attached. We cannot say that the trial court was clearly wrong in this regard.

Allocation of Fault

The trial court reasoned that, even though the actions committed by Cpl. Dai-ley were unjustified, Nelson should have “shown more courtesy” to Cpl. Dailey because of Nelson’s extensive experience with law enforcement. The trial court noted that Nelson conceded this in his counseling sessions with Reverend Dobynes. For this reason, the trial court apportioned 33/6% of the fault to Nelson.
The same considerations applicable to quantum fault assessments are applied in the allocation process. The trier of fact is owed deference in allocating fault since the finding of percentages of fault is a factual | ¡¡determination. Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670; Clement v. Frey, 95-1119 (La.01/16/96), 666 So.2d 607. Only after making a determination that fault apportionment is clearly wrong can an appellate court disturb the apportionment, and then only to the extent of lowering or raising it to the highest or lowest point which is respectively within the trial court’s discretion. Clement, supra.
Louisiana has a comparative fault system. La. C.C. arts. 2323, 2324. Louisiana Civil Code article 2323(A) provides that a party’s damages shall be reduced by his degree of fault. Subsection C of article 2323, however, provides that when a person is injured as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced because of his negligence. Landry v. Bellanger, 02-1443 (La.05/20/03), 851 So.2d 943. This, however, is not always applicable in police excessive force cases. Officers may intentionally use force to preserve the peace and perform such duties as making an arrest. An officer may justifiably use reasonable force even though there is no question of self defense. You simply cannot compare civilian offenders with police officers. Rather, the proper inquiry is to compare official offenders who are provoked with official offenders who *1118 are not. See Koon v. U.S., 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).
Nelson was a retired captain with the Shreveport Police Department where he had served in many capacities. For our purposes, we note that he worked both in internal affairs and as a training officer. Obviously, Nelson |inknew he should have been more cooperative with Cpl. Dailey. The trial court reviewed the evidence, specifically the audio recording, and made the reasonable interpretation that Nelson did not jerk back and clench his fist in a threatening manner. Nelson’s reluctance to cooperate, however, constitutes “some” provocation.
We have considered the following factors in assessing the nature of the parties’ conduct and the extent of the causal relation between the conduct and the damage claimed: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the inferior and superior capacities of the actors; and, (5) any extenuating circumstances which might require the actors to proceed in haste, without proper thought. See Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). As a result, we find that, based on the facts presented, the trial court’s apportionment of 33$% fault to Nelson was clearly wrong and will be reduced to 10%, which is the highest percentage of fault the trial court could have allocated to Nelson.

Damages

Both parties argue that the $15,000 general damage award was inappropriate and constituted an abuse of the trial court’s discretion. Nelson asserts that the award was to low while defendants claim it was too high.
In assessing damages in cases of offenses and quasi-offenses, much discretion is left to the trier of fact. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial | ncourt abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Brown v. Brookshire’s Grocery Co., 38,216 (La.App. 2d Cir.03/12/04), 868 So.2d 297. Only after an articulated analysis of the facts discloses an abuse of discretion is examination of prior awards in similar cases proper. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Brown, supra; Dixon v. Tillman, 29,483 (La.App. 2d Cir.05/07/97), 694 So.2d 585, writ denied, 97-1430 (La.09/19/97), 701 So.2d 174.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,-483 (La.App. 2d Cir.09/25/96), 680 So.2d 1333, writs denied, 96-2592 (La.12/13/96), 692 So.2d 376 96-2599 (La.12/13/96), 692 So.2d 1063.
The trial court noted many factors that contributed to the court’s award of $15,000 for general damages, including: Cpl. Dai-ley’s harsh and offensive tone, Cpl. Dai-ley’s use of a PR24 to strike Nelson from the rear within 35 seconds of exiting his vehicle; the fact that Nelson was not non-cooperative; and, Nelson told Cpl. Dailey who he was and that he could produce I.D. prior to being struck. Further, Cpl. Dai-ley employed a “pain | ^compliance technique,” a method of twisting a person’s hand and fingers to force cooperation, af *1119 ter securing Chief Nelson with handcuffs. Nelson is an avid golfer, and the claim that this has substantially detracted from his enjoyment of the sport is doubtful; however, Nelson was imprisoned in the backseat of Cpl. Dailey’s police vehicle, and this fact, along with the facts above, causes Nelson embarrassment in the law enforcement community, of which Nelson is an active member. Although the encounter was of short duration and not particularly harsh, it is not clear that the trial court abused its broad discretion in awarding Nelson $15,000 in general damages, and thus a review of prior awards would be improper.

§ 1983 Claims

Nelson argues that the trial court improperly denied his claims of negligence on the part of the City. The claims are broadly stated, and based on 42 U.S.C. § 1983.
A municipality may only be held liable if a municipal policy or custom caused the constitutional injury. Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In Monell v. Department of Social Services of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the court, while recognizing that Section 1983 authorizes suits against municipalities, held that a municipality cannot be held liable for the actions of an employed tortfeasor solely on the basis of respondeat superior.
We agree with the trial court that no evidence whatsoever was provided to suggest that the Shreveport Police Department or the City have |1aany policy or custom in violation of 42 U.S.C. § 1983, and thus the trial court properly denied these claims.

Cost of Spiritual Counseling

Nelson sought solace from his pastor, Reverend Dobynes, who was not a licensed mental health counselor. In fact, Reverend Dobynes’ duties as the church minister included counseling with and advising members of his congregation. The trial court excluded his invoices for counseling with Nelson which totaled $12,558.50. We agree with the trial court’s conclusion. Fees for an unlicensed provider are not recoverable medical expenses. City of Baton Rouge v. Noble, 535 So.2d 467 (La.App. 1st Cir.1988).

Conclusion

For the reasons set forth above, that part of the trial court’s judgment apportioning fault to plaintiff, Marshall Nelson, is amended and, as amended, the judgment is affirmed. Costs are to be divided equally between the parties.
luAPPENDIX
[[Image here]]
*1120 [[Image here]]
*1121 [[Image here]]
*1122 [[Image here]]
*1123 [[Image here]]
*1124 [[Image here]]
*1125 [[Image here]]

. The petition wrongly referred to her as "Janet” when her correct name is "Janice.”

. This award was not reduced by the percentage of fault apportioned to Nelson.

. Marshall Nelson served in the Shreveport Police Department from 1968 to 1991, obtaining the rank of captain. He served in various capacities including, but not limited to, patrol, narcotics, juvenile, and criminal investigations. He served on the Training Advisory Committee, as well as the Internal Affairs Department, ultimately becoming commander of Internal Affairs. Following his retirement, he was employed by the Caddo Parish Sheriff's Office for eight years, serving as an assistant chief in charge of operations. For the past three years Nelson has served as Chief of Police for Southern University at Shreveport.