535 So.2d 467 (1988)
CITY OF BATON ROUGE and Parish of East Baton Rouge
v.
Arthur NOBLE.
No. CA 87 1150.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Rehearing Denied January 10, 1989.
Writ Denied March 10, 1989.
*468 Stephen R. Wilson, Baton Rouge, for plaintiff-appellee City of Baton Rouge, etc.
Clifton O. Bingham, Jr., Baton Rouge, for defendant-appellant Arthur Noble.
Before CARTER, LANIER and LeBLANC, JJ.
*469 LANIER, Judge.
This action commenced as a suit by an employer seeking a declaratory judgment that it had discharged its obligations owed to its employee under the Louisiana Worker's Compensation law. The employee answered and filed a reconventional demand for compensation benefit payments, medical expenses, rehabilitation costs and statutory penalties. The trial court judge found as a fact that the employee had a temporary total disability and this disability was resolved by February 7, 1986, and rendered judgment on the main demand in favor of the employer and dismissed the reconventional demand. The employee took this devolutive appeal.

FACTS
Arthur Noble was first employed by the City of Baton Rouge and the Parish of East Baton Rouge (City-Parish) in 1972. Noble's preemployment physical examination at that time reflected a 30% disability to his lower extremities. This disability was received during Noble's military service in the Navy. In 1974, Noble left the City-Parish. In 1979, he was reemployed by the City-Parish where he worked as an engineer aide doing drafting until about November of 1985.
On May 8, 1983, Noble was injured in a non-job-related automobile accident. As a result of that accident, Noble sustained injuries to his back, legs, and neck, and sought treatment from Dr. Gary Black, a chiropractor.
On July 10, 1984, while still receiving treatment from Dr. Black for his non-job-related injuries, Noble slipped and fell while at work. On July 11, 1984, Noble filed a report with the City-Parish concerning the accident. In the report, he described his injuries as "elbow, both knees, back, head & other parts."
After the July 10, 1984 accident, Noble continued receiving treatment for his back from Dr. Black; and he commenced receiving treatment for his knee from Dr. Alan Farries, an orthopedic surgeon. Dr. Farries last saw Noble on October 5, 1984. In a letter, dated January 13, 1985, addressed to the Office of Risk Management, Dr. Farries stated, "I feel Mr. Noble has made a good recovery from his injuries with minimal, if any, residual disability."
On December 10, 1984, Noble was once again injured in a job-related accident when a City-Parish vehicle, in which he was a passenger, was struck from behind. In an accident report which Noble filed the next day with the City-Parish, he indicated lower back pain. After this accident, Noble continued seeing Dr. Black. He also sought treatment from Dr. Chavers, a City doctor, and from a Dr. Clifford.
The City-Parish paid weekly workers' compensation benefits and medical expenses for the two job-related accidents until May 23, 1986.[1] On July 17, 1986, Noble filed a claim with the Office of Worker's Compensation Administration (OWCA) claiming he was still entitled to workers' compensation benefits. On August 14, 1986, OWCA rendered its recommendation. The City-Parish rejected the recommendation, and this suit resulted.

ADMISSIBILITY OF CHIROPRACTOR'S OPINIONS

(Assignment of Error Number 1)
Noble argues that the "trial court erred in refusing to consider the testimony of Dr. Gary D. Black, D.C."
In his reasons for judgment, the trial judge stated, in pertinent part, the following:
[T]he Court refused to consider the opinion testimony of Dr. Black for treatment rendered when his renewal licenses were not recorded. Plaintiff's Exhibit 26 indicates that Dr. Black recorded his 1976-1984 renewal license in November 1984. *470 The 1984-85 renewal was not recorded until February 2, 1987. In Ensminger v. McCormick, 489 So.2d 1316 (La.App. 1st Cir.1986), the Court stated that recordation of renewal licenses must be done properly.
Noble argues that, even though Dr. Black failed to timely record his renewal licenses with the clerk of court, his competency was not affected and he should have been allowed to testify.
La.R.S. 37:2810 provides:
Beginning with the calendar year 1975, each license to practice chiropractic in this state shall be renewed annually on or before October 31st of each year, upon payment of the renewal fee prescribed in R.S. 37:2809 and the presentation to the board of a certificate showing satisfactory attendance of at least one two-day chiropractic educational seminar or convention approved by the board. However, for good and reasonable cause, the board may waive the convention or seminar requirements.
At the time of trial, December 8, 1986, La.R.S. 37:2811(A)[2] provided, as follows:
Every licensee shall record his license with the clerk of court for the parish in which he practices, and until recorded, the holder thereof shall not be entitled to practice chiropractic in this state.
In Ensminger v. McCormick[3], 489 So.2d 1316 (La.App. 1st Cir.), writ denied, 493 So.2d 1219 (La.1986), this court held that, if a chiropractor's renewal license was not recorded, La.R.S. 37:2811 precluded him from the practice of chiropractic in this state, and a person performing examinations without a license was precluded from testifying as an expert witness regarding those examinations.
At trial, Noble's attorney judicially confessed[4] that Dr. Black's renewal license for the years 1977 through 1984 had not been filed until November 15, 1984, and, also, that the clerk's office did not have a renewal for the period of October 31, 1984, through October 31, 1985. The trial judge did not err in refusing to consider Dr. Black's testimony during this time span.
This assignment of error is without merit.

RECOVERY OF CHIROPRACTOR CHARGES

(Assignment of Error Number 3)
Noble argues that the "trial court erred in refusing to allow recovery of the *471 charges for Dr. Gary D. Black, D.C. incurred during the period his renewal license was not timely recorded."
La.R.S. 23:1203(A) provides, in pertinent part, as follows:
[T]he employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. [Emphasis added.]
According to Black's Law Dictionary, p 803 (5th Ed.1979), the definition of "legal" is, "1. Conforming to the law; according to law; required or permitted by law; not forbidden or discountenanced by law; good and effectual in law."
Dr. Black's renewal licenses for the years 1977 through 1984 were not filed until November 15, 1984, and the clerk had no record of his renewal license for October 31, 1984, through October 31, 1985. According to La.R.S. 37:2811, for the years 1977 through 1985, Dr. Black was not entitled to practice chiropractic in this state. Therefore, his charges for those years were not "legal."
Noble further contends that the "trial court further erroneously based his decision not to order payment of Dr. Black's charges on the reason that `... no proof has been made as to the expenses incurred for treatment for only the job related accidents.'" Since we have ruled that Dr. Black's charges were not "legal" charges under La.R.S. 23:1203(A), there is no need for us to address this issue.
This assignment of error is without merit.

NATURE AND EXTENT OF DISABILITY

(Assignment of Error Number 2)
Noble argues that the trial court erred in finding that his temporary total disability was resolved sometime before February 7, 1986. Noble contends that the trial judge was manifestly erroneous because he based his decision on the testimony of one witness, Minnie Owens, who was directly contradicted by several other lay witnesses and virtually all of the medical testimony. Noble argues that on July 10, 1984, and on December 10, 1984, he sustained severe and permanent injuries to his cervical and lumbar spine and both of his knees, and that the evidence shows that he has not recovered from these injuries.
An employee in a workers' compensation case has the burden of proving to a legal certainty and by a preponderance of the evidence the nature and extent of his disability. Lewis v. Piccadilly, Inc., 489 So.2d 984 (La.App. 1st Cir.1986); Mix v. Mougeot, 446 So.2d 1352 (La.App. 1st Cir. 1984). In his reasons for judgment, the trial judge stated, in pertinent part, the following:
ACCIDENT
The evidence establishes that Noble was involved in two job-related accidentsJuly 10, 1984, and December 10, 1984.
CAUSATION
Where there is proof of an accident and of the following disability without intervening cause, it is presumed the accident caused the disability. Tucker v. Associated Grocers, 473 So.2d 328 (La. App. 1st Cir.1985). The evidence supports that Noble sustained injury to his knee in the July 10, 1984 accident and some back discomfort from the December 10, 1984 accident.
DISABILITY
The level of proof required for establishing a temporary total disability is by a preponderance of the evidence, whereas, a claimant must prove a permanent total disability by clear and convincing evidence. Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987).
This court finds that Noble was temporarily totally disabled due to the job-related accidents, however, that the disability obviously was resolved sometime during *472 Noble's relationship with Ms. Owens. Being unable to determine the exact date, this court finds that the temporary total disability did not extend beyond February 7, 1986.
In deciding whether an employee has proven his claimed disability, the totality of the evidence, medical and lay, must be considered. It is the trial judge's function to determine the weight to be accorded the medical and the lay testimony. Westley v. Pressure Services, Inc., 452 So.2d 354 (La. App. 1st Cir.1984). See also, Miles v. Dolese Concrete Company, 507 So.2d 2 (La.App. 1st Cir.1987), aff'd, 518 So.2d 999 (La.1988). The trial court's factual determination as to the length of disability is entitled to great weight and will not be disturbed except upon a showing of manifest error. Lewis v. Piccadilly, Inc., 489 So.2d at 986; Mix v. Mougeot, 446 So.2d at 1355.
After reviewing the record, we find no manifest error in the trial judge's factual findings.
Dr. Alan Farries, an orthopedic surgeon who treated Noble for his knees after the July 10, 1984 accident, stated in a letter dated January 13, 1985, addressed to the Office of Risk Management, that Noble had made a good recovery from his injuries with minimal, if any, residual disability.
Dr. Kenneth Cranor, an orthopedic surgeon who treated Noble for his back and who examined Noble on January 7, 1986, July 15, 1986, and in September of 1986, stated that Noble was not disabled for light and moderate work; that Noble did not have an acute nerve root compression, and he doubted if there was a nerve root compression at all; that Noble could work as a draftsman; and that he would not place any formal limitations on Noble for sitting, standing, walking, bending, stooping, and climbing stairs.
After the December 10, 1984 accident, Noble was seen by Dr. Chavers, a City-Parish physician. Dr. Chavers referred Noble to Dr. Clifford, a neurosurgeon, for testing. A CT scan of the lumbar spine performed on May 7, 1985, indicated a moderate circumferential disc bulge at L3-4 and L4-5, with no evidence of nerve root displacement or obliteration of intrathecal fat, or any evidence of focal disc protrusion that might give rise to neurological symptoms. After reviewing Noble's CT scan, Dr. Clifford suggested that more tests be done; however, none were.
Minnie Owens dated Noble from September 27, 1985, through February 7, 1986. She testified that, when she and Noble went out dancing, Noble would not dance fast because he did not want to jeopardize his chances of getting money from the City-Parish. She stated that she helped Noble bale hay in October of 1985 and that during their relationship she had seen him load 20 gallon cans of gasoline into his van, load a washer and dryer onto a pickup truck, change a ceiling fan, carry a window air-condition unit down stairs of a garage apartment, clean and install a window air-condition unit, and paint the inside of a garage apartment. She also stated that Noble never did complain afterwards, or exhibit any difficulty in performing any of the activities she described.
The trial judge's factual finding that the temporary total disability suffered by Noble did not extend beyond February 7, 1986, was not manifestly erroneous.
This assignment of error is without merit.

RECOVERY OF COST OF MEDICAL SUPPLIES

(Assignment of Error Number 4)
Noble argues that the "trial court erred in refusing to allow recovery of the cost of a traction unit, a cervical pillow and a lumbosacral corset prescribed by the City's independant [sic] medical examiner, Dr. Kenneth Cranor."
On July 15, 1986, after examining Noble, Dr. Cranor prescribed a traction unit, cervical pillow, and a lumbosacral corset for Noble. Philip Moory, a claims adjuster for City-Parish who handled Noble's claim, testified that he did not approve payment for the items because he "couldn't tell whether the prescription was for his [Noble's] *473 1983 accident or for some other accident prior to '83." After the trial, the trial judge denied recovery of the cost of these items, in his reasons for judgment, stating, "this court does not find that sufficient proof exists to attribute the cost of the traction, pillow and corset to the job-related accidents...."
In a workers' compensation suit, the plaintiff is required to establish his claim to a reasonable certainty and by a preponderance of the evidence. Donald v. Big Three Industries, Inc., 426 So.2d 257 (La.App. 1st Cir.), writ denied, 429 So.2d 157 (La.1983); Francis v. Bogalusa Iron Works, Inc., 322 So.2d 292 (La.App. 1st Cir.1975). The award of medical expenses to a workers' compensation claimant must be limited to those shown to have been made necessary by the accident. Steven v. Liberty Mutual Insurance Co., 509 So.2d 720 (La.App. 3rd Cir.1987); Gibson v. Hayes Oilfield Construction Company, 467 So.2d 1304 (La.App. 3rd Cir.), writ denied, 472 So.2d 918 (La.1985); Mitchell v. K-Mart Enterprises of Louisiana, Inc., 319 So.2d 826 (La.App. 1st Cir.1975). An injured employee is not entitled to recover for additional medical expenses where he fails to offer proof to substantiate his claim. Steven v. Liberty Mutual Insurance Co., 509 So.2d at 722; Ricks v. Crowell & Spencer Lumber Co., 189 So. 466 (La.App. 1st Cir.1939).
The evidence shows that Noble was still under Dr. Black's care for his May 23, 1983 non-job-related injuries when he slipped and fell at work. Noble had seen Dr. Black approximately 56 times, including 7 times in the month of June of 1984, and an additional 2 times during the week preceding his injury with the City-Parish.
Dr. Cranor, who prescribed the items, was asked the following at trial:
Q. Okay. Now, the next visit I believe you said was in July of '86?
A. Yes, sir.
Q. And that's the occasion where you made some prescriptions for Mr. Noble, a pillow and a traction unit
A. Yes, sir.
Q. and a corset, is that right?
A. Yes, sir.
Q. Did you make those prescriptions with the intention of saying that Mr. Noble was suffering from a specific traumatic injury sustained on the job with the City and that the City should therefore buy those items for Mr. Noble?
A. No, sir.
Q. Did you make such findings? I know you didn't say it in any report. Did you make such a finding and was that your impression?
A. The way I really wrote this is, I was telling him what I thought and what I would suggest that he do about it, and then, you know, by the time you get to that point it's just pretty easy to finish it, which you do out of habit, and then I handed it to him, because I was trying to betried to help him himself as much as he could too. So that's really the way it came about. But itit was not that doesn't have anyany impact at all as to what the cause of this was, really.
At trial, Noble did not show by a preponderance of the evidence that the traction unit, cervical pillow, and lumbosacral corset were made necessary by the job-related accidents. The trial judge was not wrong in denying Noble recovery of the cost of these items.
This assignment of error is without merit.

COST OF REHABILITATION

(Assignment of Error Number 5)
Noble argues that the trial court erred in not finding that he was entitled to rehabilitation services and in assessing the cost of the rehabilitation evaluation to him.
La.R.S. 23:1226(A) provides as follows:

When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled *474 to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies. [Emphasis added.]
The trial judge found, and we agree, that Noble's disability did not extend beyond February 7, 1986. Dr. Cranor testified that Noble could return to work as a draftsman. Noble offered no evidence at trial showing that he was unable to earn wages equal to the wages he earned prior to his injury. Noble is not entitled to rehabilitation under La.R.S. 23:1226.
This assignment of error is without merit.

STATUTORY PENALTIES

(Assignment of Error Number 6)
Noble argues that the trial court erred in not awarding him interest, penalties and reasonable attorney's fees. Noble contends that the City-Parish's termination of his weekly workers' compensation benefits on May 23, 1986, was arbitrary and capricious and, therefore, under La.R.S. 23:1201.2, penalties and attorney's fees should be assessed.
Since the trial judge correctly concluded that Noble's disability did not extend beyond February 7, 1986, and that City-Parish had fully satisfied any obligations to Noble, the trial judge was also correct in not finding City-Parish to be arbitrary and capricious so as to render them liable for statutory penalties under La.R.S. 23:1201.2.
This assignment of error is without merit.

ASSESSMENT OF COSTS

(Assignment of Error Number 7)
Noble argues that the trial court erred in assessing the whole cost of the proceeding including expert witness fees against him.
The trial court has discretion in assessing costs. La.C.C.P. art. 1920; Patterson v. Holmes, 464 So.2d 394 (La.App. 1st Cir. 1985). As a general rule, costs are taxed to the losing party. Long v. Panther Airboat Corporation, 453 So.2d 304 (La.App. 1st Cir.1984). There has been no showing that the trial judge abused his discretion. Noble was the losing party.
This assignment of error is without merit.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. Noble is cast for the cost of this appeal.
AFFIRMED.
CARTER, J., concurs.
NOTES
[1] There is no indication in the record when the workers' compensation payments started or if they were paid throughout the period of Noble's first job-related accident (July 10, 1984) through May 23, 1986. The record does show, however, that Noble did return to work for periods of time between July 10, 1984, and November of 1985, when he no longer worked for City-Parish.
[2] The legislature has amended La.R.S. 37:2811. The amendment became effective on July 5, 1987, which is after Noble's accident and after the trial was held. La.R.S. 37:2811 now reads as follows:

A. Within thirty days of the commencement of his practice, every licensee shall record his license or a duplicate original with the clerk of court for the parish in which he practices. Upon the request of the licensee, the board shall issue a duplicate original of his license and shall record it with the clerk of court in the parishes designated by the licensee. The clerk of court shall make this recordation in a book to be kept for that purpose only. The clerk of court may charge a fee of one dollar for the recordation.
B. In the event that a license is suspended, revoked, or otherwise restricted by the board, the board shall notify the clerk of court where the license was recorded. When a license is revoked, the clerk of court shall cancel such recordation. When a license is suspended or otherwise restricted, the clerk shall note on the original recordation the suspension or restriction imposed.
C. The board shall publish annually a list of the names and office addresses of the holders of the licenses issued under this Part. This list shall be received in evidence by the courts as proof that the individuals named are duly registered. The board may strike from this list the name of any person whose license has been suspended or revoked or may state any restriction imposed on such license. The board may furnish such list to any agency, board, or organization having a reasonable need for such list.
D. The provisions of this Section shall not be construed to require an annual recordation of the license renewal.
[3] La.R.S. 37:2811 has been amended, effective July 5, 1987. This amendment legislatively overrules Ensminger.
[4] La.C.C. art. 1853 states as follows:

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.