921 So.2d 1111 (2006)
Marshall NELSON, Plaintiff-Appellant
v.
CITY OF SHREVEPORT, Shreveport Police Department, Chief Jim Roberts, Officer Janet Dailey and Other Unnamed Officers, Defendants-Appellants.
No. 40,494-CA.
Court of Appeal of Louisiana, Second Circuit.
January 27, 2006.
*1113 Sheva M. Sims, Shreveport, for Plaintiff/Appellant.
Sharp, Henry, Cerniglia, Colvin Weaver & Hymel, by Pamela N. Breedlove, *1114 Shreveport, for Defendant/Appellant, City of Shreveport.
Tutt, Stroud & Bordelon, LLC, by A.M. Stroud, III, Shreveport, for Defendant/Appellant, Corporal Janet Dailey.
Before BROWN, GASKINS, and LOLLEY, JJ.
BROWN, C.J.
A retired Shreveport police officer, Marshall Nelson, filed this action against Shreveport Police Corporal Janice Dailey,[1] Chief Jim Roberts, and The City of Shreveport, seeking general and specific damages for battery, false arrest, false imprisonment, and, as to the City, violations of 42 U.S.C. § 1983.
Chief Roberts was dismissed by means of a partial summary judgment. The trial court rendered judgment on February 8, 2005, awarding general damages to Nelson and ordering Cpl. Dailey and the City to pay the amount of $15,000 for battery, false arrest, and false imprisonment. The trial court apportioned 331/3% fault to Nelson, reducing his recovery to $10,000. The court then awarded Nelson special damages in the amount of $593.30.[2] The trial court rejected Nelson's independent federal claims under 42 U.S.C. § 1983 against the City which pertained to its procedures in the hiring and training of officers. Further, the trial court denied Nelson's request for special damages related to counseling he received from his minister and spiritual advisor, Reverend Aaron Dobynes. Nelson has appealed the apportionment of fault, the dismissal of his 42 U.S.C. § 1983 claims, and the amount of damages awarded. Defendants have also appealed the trial court's judgment on the issues of liability and damages. For the reasons set forth below, we amend in part to reduce the percentage of fault allocated to Nelson, and, as amended affirm.

Facts
On March 20, 2003, at approximately 9:00 p.m., Nelson, a retired Shreveport police officer with 23 years of service,[3] was eastbound on Greenwood Road near its intersection with Jewella Avenue. Nelson pulled off of Greenwood Road onto the south end of the Westwood Shopping Center to talk on his cell phone. He parked his vehicle but kept his parking lights illuminated. At approximately 9:15 p.m., Corporal Janice Dailey, also eastbound on Greenwood Road, observed Nelson's stationary vehicle and decided to investigate. Corporal Dailey noticed that the vehicle bore a public license plate. At this time, Nelson was the Chief of Police for Southern University; however, we note that the university campus was located across town from where this incident occurred. Corporal Dailey pulled to the side of Nelson's car but did not immediately activate her mobile video recording system. What transpired before the recording system was activated is in dispute.
According to Nelson, Cpl. Dailey inquired, "Who do you work for?" Nelson responded, "Why?" Corporal Dailey then ordered Nelson out of his car. Nelson *1115 testified that he got out of his car with his hands out of his pockets.
Corporal Dailey, however, testified that she rolled her window down and greeted Nelson by stating, "Hi, how are you" and in what she described as a "conversational" tone, asked Nelson, "Sir, tell me who you are and who you work for." Nelson responded, "What do you mean who do I work for? I ain't gonna tell you (expletive)."
After this initial exchange, Cpl. Dailey activated the mobile video recording system; however, because the camera was directed to the front of Cpl. Dailey's vehicle, it did not cover the incident at the side of Nelson's vehicle. The recording, however, does provide an audio of the incident, which lasted for seven minutes, from 9:16 p.m. to 9:23 p.m. While Cpl. Dailey and Nelson do not dispute the dialogue which is heard on the tape, they strongly disagree as to the physical actions of each other during the seven minute encounter.
Corporal Dailey testified that Nelson got out of his car, placed both hands in his pockets, and continued to keep his hands in his pockets in spite of her commands. She also stated that Nelson did not properly place his hands on his car and spread his feet as ordered. Furthermore, within the first minute of the encounter, Nelson "jerked back and clenched his fist" at Cpl. Dailey. The officer stated that she hit Nelson on the back of his thighs with her impact weapon, a PR24, in response to his aggressive actions. She did a pat-down search and found no weapon. Even so, she handcuffed Nelson and forced him into the back seat of her cruiser.
Nelson denied that he "jerked back," or displayed a "clenched fist." Instead, Nelson testified that he attempted to retrieve his identification before complying with Cpl. Dailey's request to place his hands on his car. According to Nelson, Cpl. Dailey struck his thighs without provocation. Corporal Dailey then locked Nelson in handcuffs and used a "pain compliance technique" on Nelson's hand to move him into the backseat of the police car.
Lieutenant Lawrence D. Thomas arrived at the scene and recognized Nelson as a retired ranking officer of the Shreveport Police Department. When asked, Cpl. Dailey told Lt. Thomas that she did not have any charges on Nelson. Lt. Thomas ordered Cpl. Dailey to release Nelson, and after a Fire Department medical team cleared him of any immediate health risk, Nelson left the scene.
The trial court concluded the following from listening to the recording. Corporal Dailey's tone was not "conversational," but was harsh and offensive. Corporal Dailey used her PR24 to strike Nelson within 35 seconds of Nelson exiting his vehicle. Nelson uttered no profanity during the first four and a half minutes of the tape, and Nelson cursed only once thereafter. Nelson told Corporal Dailey, before being struck, that he was a retired police officer, he had identification, and he was not resisting her. The court also found there to be no indication from the tape that Nelson exhibited any aggressive behavior toward Cpl. Dailey. The court found that Corporal Dailey was unable to articulate any crime that had occurred or was about to occur and had handcuffed and detained Nelson in the back of her police car without probable cause.
The trial court concluded that because Nelson was parked adjacent to closed businesses in a high crime area at night Cpl. Dailey was legally justified in inquiring of Nelson his name, address, place of employment, and an explanation of his actions in accordance with La. C. Cr. P. article 215.1(A) and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Likewise, the act of conducting a pat-down or frisk of Nelson was justified under the *1116 circumstances. However, the act of striking Nelson was unreasonable, unjustified, and constituted an excessive use of force under Shreveport Police departmental procedures and a battery under Louisiana Law. Corporal Dailey's act of placing Nelson in handcuffs was unjustified under the circumstances, and her use of a pain compliance technique (twisting Nelson's fingers and hand while he was handcuffed) was unnecessary. Nelson's arrest and imprisonment in the back of Cpl. Dailey's police vehicle was in violation of La. C. Cr. P. art. 213 and departmental procedures inasmuch as Cpl. Dailey did not have probable cause to believe Nelson had committed any offense whatsoever, and therefore Cpl. Dailey committed the tortious offense of false arrest/imprisonment of Nelson.
The trial court found that Rev. Dobynes was not a Ph. D. level psychologist or a M.D. level psychiatrist, so he was not qualified to pinpoint, with specification, whether all of the psychological injuries described by Nelson were caused by the incident of March 20, 2003, and was therefore not entitled to reimbursement for the spiritual counseling he rendered to Nelson, who was a member of his church.
The court concluded that there was no evidence presented at trial supporting the claims made by Nelson against the City referenced in litigation as "independent negligence" and "federal claims" which pertain to allegations of negligence on the part of the City in the training and supervision of Cpl. Dailey. Therefore, the trial court denied Nelson's 42 U.S.C. § 1983 claims.
The trial court awarded Nelson $15,000 in general damages against Cpl. Dailey and the City. Notwithstanding the finding of battery, false arrest, and false imprisonment, the trial court held that Nelson, due to his extensive experience in law enforcement, should have shown Cpl. Dailey more courtesy and cooperation. For this reason, the trial court found comparative fault on the part of Nelson in his initial responses to Cpl. Dailey and assessed him with one-third of the fault. The trial court awarded special damages in the amount of $593.30 which represented treatment by a chiropractor and cash lost when Nelson's wallet was dropped to the ground.

Discussion

Findings of False Arrest/Excessive Force
Obviously, Nelson, with his hands cuffed behind his back and locked in the backseat of a police car, was imprisoned. Equally apparent is that the officer's striking of Nelson with the PR24, as well as her handcuffing and forcing him into the back of the police cruiser, constitute the intentional application of force. However, police officers are always armed with dangerous weapons and may legitimately employ reasonable force to perform their duties and preserve order. Their use of force is privileged so long as the force used is not unreasonable or excessive.
Whether the force used is reasonable depends on the totality of the facts and circumstances in each case. The degree of force employed is a factual issue, and the trial court's factual findings are entitled to great weight. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977), Harris v. Carter, 33,951 (La.App. 2d Cir.10/04/00), 768 So.2d 827; Evans v. Hawley, 559 So.2d 500 (La.App. 2d Cir. 1990).
Factors to be considered in making a determination of whether the force used was reasonable under the circumstances include: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest *1117 or subduing the arrestee; the physical size, strength and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. Kyle, supra; Evans, supra. One of the factors taken into consideration when determining whether a police officer used reasonable or unreasonable force is whether the plaintiff was intoxicated, belligerent, offensive, or uncooperative. See Crawford v. Maryland Casualty Co., 169 So.2d 612 (La.App. 2d Cir.1964).
Nelson told Cpl. Dailey that he was a retired police officer and attempted to show her some identification. Corporal Dailey had him turn around and put his hands on the car. Cpl. Dailey then struck him on the back of his legs with the PR24 and patted him down. She found no weapons nor did she know of any charges to make against Nelson. While the trial court found an investigatory stop to be proper, the court concluded that delivering multiple strikes with a PR24 to the back of Chief Nelson's thighs while his hands were on the hood of his car was an excessive use of force. We agree with the trial court and can specifically identify the time when Nelson was struck with the PR24 as the point in time that Cpl. Dailey exceeded her authority. Considering Cpl. Dailey's statement to her supervisor that she had no charges against Nelson, the trial court concluded that the handcuffing and use of the "pain compliance technique" was improper and excessive. Specifically, she told Lt. Thomas, "I don't have any charges on him.... He's just acting a fool."
A review of the audio recording unquestionably supports the trial court's findings. A copy of the transcription is attached. We cannot say that the trial court was clearly wrong in this regard.

Allocation of Fault
The trial court reasoned that, even though the actions committed by Cpl. Dailey were unjustified, Nelson should have "shown more courtesy" to Cpl. Dailey because of Nelson's extensive experience with law enforcement. The trial court noted that Nelson conceded this in his counseling sessions with Reverend Dobynes. For this reason, the trial court apportioned 331/3% of the fault to Nelson.
The same considerations applicable to quantum fault assessments are applied in the allocation process. The trier of fact is owed deference in allocating fault since the finding of percentages of fault is a factual determination. Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670; Clement v. Frey, 95-1119 (La.01/16/96), 666 So.2d 607. Only after making a determination that fault apportionment is clearly wrong can an appellate court disturb the apportionment, and then only to the extent of lowering or raising it to the highest or lowest point which is respectively within the trial court's discretion. Clement, supra.
Louisiana has a comparative fault system. La. C.C. arts. 2323, 2324. Louisiana Civil Code article 2323(A) provides that a party's damages shall be reduced by his degree of fault. Subsection C of article 2323, however, provides that when a person is injured as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced because of his negligence. Landry v. Bellanger, 02-1443 (La.05/20/03), 851 So.2d 943. This, however, is not always applicable in police excessive force cases. Officers may intentionally use force to preserve the peace and perform such duties as making an arrest. An officer may justifiably use reasonable force even though there is no question of self defense. You simply cannot compare civilian offenders with police officers. Rather, the proper inquiry is to compare official offenders who are provoked with official offenders who *1118 are not. See Koon v. U.S., 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).
Nelson was a retired captain with the Shreveport Police Department where he had served in many capacities. For our purposes, we note that he worked both in internal affairs and as a training officer. Obviously, Nelson knew he should have been more cooperative with Cpl. Dailey. The trial court reviewed the evidence, specifically the audio recording, and made the reasonable interpretation that Nelson did not jerk back and clench his fist in a threatening manner. Nelson's reluctance to cooperate, however, constitutes "some" provocation.
We have considered the following factors in assessing the nature of the parties' conduct and the extent of the causal relation between the conduct and the damage claimed: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the inferior and superior capacities of the actors; and, (5) any extenuating circumstances which might require the actors to proceed in haste, without proper thought. See Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). As a result, we find that, based on the facts presented, the trial court's apportionment of 331/3% fault to Nelson was clearly wrong and will be reduced to 10%, which is the highest percentage of fault the trial court could have allocated to Nelson.

Damages
Both parties argue that the $15,000 general damage award was inappropriate and constituted an abuse of the trial court's discretion. Nelson asserts that the award was to low while defendants claim it was too high.
In assessing damages in cases of offenses and quasi-offenses, much discretion is left to the trier of fact. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Brown v. Brookshire's Grocery Co., 38,216 (La.App. 2d Cir.03/12/04), 868 So.2d 297. Only after an articulated analysis of the facts discloses an abuse of discretion is examination of prior awards in similar cases proper. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Brown, supra; Dixon v. Tillman, 29,483 (La.App. 2d Cir.05/07/97), 694 So.2d 585, writ denied, 97-1430 (La.09/19/97), 701 So.2d 174.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App. 2d Cir.09/25/96), 680 So.2d 1333, writs denied, 96-2592 (La.12/13/96), 692 So.2d 376 96-2599 (La.12/13/96), 692 So.2d 1063.
The trial court noted many factors that contributed to the court's award of $15,000 for general damages, including: Cpl. Dailey's harsh and offensive tone, Cpl. Dailey's use of a PR24 to strike Nelson from the rear within 35 seconds of exiting his vehicle; the fact that Nelson was not non-cooperative; and, Nelson told Cpl. Dailey who he was and that he could produce I.D. prior to being struck. Further, Cpl. Dailey employed a "pain compliance technique," a method of twisting a person's hand and fingers to force cooperation, after *1119 securing Chief Nelson with handcuffs. Nelson is an avid golfer, and the claim that this has substantially detracted from his enjoyment of the sport is doubtful; however, Nelson was imprisoned in the backseat of Cpl. Dailey's police vehicle, and this fact, along with the facts above, causes Nelson embarrassment in the law enforcement community, of which Nelson is an active member. Although the encounter was of short duration and not particularly harsh, it is not clear that the trial court abused its broad discretion in awarding Nelson $15,000 in general damages, and thus a review of prior awards would be improper.

§ 1983 Claims
Nelson argues that the trial court improperly denied his claims of negligence on the part of the City. The claims are broadly stated, and based on 42 U.S.C. § 1983.
A municipality may only be held liable if a municipal policy or custom caused the constitutional injury. Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In Monell v. Department of Social Services of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the court, while recognizing that Section 1983 authorizes suits against municipalities, held that a municipality cannot be held liable for the actions of an employed tortfeasor solely on the basis of respondeat superior.
We agree with the trial court that no evidence whatsoever was provided to suggest that the Shreveport Police Department or the City have any policy or custom in violation of 42 U.S.C. § 1983, and thus the trial court properly denied these claims.

Cost of Spiritual Counseling
Nelson sought solace from his pastor, Reverend Dobynes, who was not a licensed mental health counselor. In fact, Reverend Dobynes' duties as the church minister included counseling with and advising members of his congregation. The trial court excluded his invoices for counseling with Nelson which totaled $12,558.50. We agree with the trial court's conclusion. Fees for an unlicensed provider are not recoverable medical expenses. City of Baton Rouge v. Noble, 535 So.2d 467 (La.App. 1st Cir.1988).

Conclusion
For the reasons set forth above, that part of the trial court's judgment apportioning fault to plaintiff, Marshall Nelson, is amended and, as amended, the judgment is affirmed. Costs are to be divided equally between the parties.

APPENDIX
MARSHALL NELSON NUMBER 474, 961-B
VERSUS FIRST JUDICIAL DISTRICT COURT
THE CITY OF SHREVEPORT, ET AL CADDO PARISH, LOUISIANA

 TRANSCRIPT OF TAPE
TIME SPEAKER STATEMENT
21:16:17 M. Nelson Wait officer I'm sitting here on my own telephone.
21:16:18 Corp. Dailey Get out. Get out.

*1120
21:16:20 Corp. Dailey Put me out here with a 35 behind, I think it's Super One at
 Jewella and Greenwood.
21:16:25 Corp. Dailey Turn around.
21:16:26 M. Nelson For what officer?
21:16:27 Corp. Dailey Because I asked you to.
21:16:28 M. Nelson Listen, I'm a retired officer from the police department.
21:16:29 Corp. Dailey Turn around. Turn around.
21:16:31 M. Nelson I've got some ID.
21:15:32 Corp. Dailey And do not put your hand in your pocket again!
21:16:33 M. Nelson I'm not. Listen do not tell me to.
21:16:34 Corp. Dailey Turn around!
21:16:35 M. Nelson You've got to tell me why you've got to frisk me!
21:16:37 Corp. Dailey Because I have that right.
21:16:38 M. Nelson Now, wait a minute. No, no, no wait a minute. Wait a minute
 officer.
21:16:41 Corp. Dailey Get your hands on your car and spread your feet.
21:16:42 M. Nelson Wait a minute.
21:16:43 M. Nelson I'm not resisting you.
21:16:44 Corp. Dailey Yeah, you are. You are not doing.
21:16:46 M. Nelson I'm a retired officer.
21:16:47 Corp. Dailey Sir I don't care who you are! Put your hands on the car and
 Spread your feet, now!
21:16:52 Corp. Dailey Do it!
21:16:53 M. Nelson My hands are on the car.
21:16:53 Corp. Dailey I said do it! (hear hit)
21:16:54 M. Nelson Don't hit me officer.
21:16:56 Corp. Dailey I said do it.
21:16:57 M. Nelson My hands are on the car. What do you want me to do?
21:16:58 Corp. Dailey I want you to do what I tell you to when I tell you to.
21:17:00 M. Nelson My hands are on the car and my legs are spread.
21:17:02 Corp. Dailey No they are not! Spread em!
21:17:04 M. Nelson Wait a minute. Wait a minute officer. Just a minute. Will
 you listen to me?
21:17:13 Corp. Dailey You were sitting behind a closed business.
21:17:16 M. Nelson No, no baby.

*1121
21:17:17 Corp. Dailey Do not take your hands off the car again! Do not!
21:17:21 M. Nelson Is this what people say from the street?
21:17:24 Corp. Dailey Do not take your hands off your car again!
21:17:25 M. Nelson I'm not moving on you and you done rapped me all over my
 legs. I don't have any weapon.
21:17:30 Corp. Dailey I don't know that!
21:17:33 M. Nelson Listen, my name is Marshall Nelson.
21:17:34 Corp. Dailey Do not take your hands off your car.
21:17:34 M. Nelson Let me tell you who I am!
21:17:35 M. Nelson Let me tell, I ain't moved my hands! My name is Marshall
 Nelson! I'm a retired police officer!
21:17:43 Corp. Dailey Give it here. (hear handcuffs)
21:17:46 M. Nelson You got to tell me why you're doing this.
21:17:49 Corp. Dailey Man, if you are a retired officer you know why I'm doing this.
21:17:53 M. Nelson No I don't.
21:17:54 Corp. Dailey It's because you're acting a fool!
21:17:55 M. Nelson Wait a minute. Come on now.
21:17:56 Corp. Dailey And this is for my safety and yours.
21:17:59 M. Nelson My name is Marshall Nelson. I'm a retired police officer.
21:18:02 Corp. Dailey Set him in the back of my car please.
21:18:03 M. Nelson Don't put me in the car. Don't put me in the car.
21:18:05 Corp. Dailey Mister! Walk that way.
21:18:06 M. Nelson Let me tell you where my ID is. Check what my ID says.
21:18:07 Corp. Dailey I don't care!
21:18:09 M. Nelson Wait just a minute. That's the supervisor?
21:18:11 Corp. Dailey Get off of the car!
21:18:13 M. Nelson Ask the supervisor to come here.
21:18:14 Corp. Dailey Get off of your car and in my car!
21:18:17 M. Nelson Wait a minute! Wait a minute! You know who you are
 handling?
21:18:18 M. Nelson Don't twist my hand.
21:18:19 Corp. Dailey Get in the car now! Now!
21:18:19 M. Nelson I'm getting in.
21:18:20 (Lt. Thomas arrives in his car.)

*1122
21:18:22 M. Nelson But, don't twist my hand officer! Don't twist my hand, please!
21:18:27 Corp. Dailey Get in. Get in.
21:18:30 M. Nelson Officer, Sergeant come here a minute.
21:18:30 Corp. Dailey Get in. Get in.
21:18:31 M. Nelson I'm in the car! Don't twist my hand like that.
21:18:34 Corp. Dailey Get your feet in. Get your feet in. You better get em in.
21:18:36 M. Nelson Wait just a minute. Let the Lieutenant come over here.
21:18:38 Corp. Dailey You better get em in!
21:18:40 M. Nelson Don't rap me with that. Lieutenant.
21:18:40 M. Nelson Lieutenant.
21:18:41 Corp. Dailey I don't care. Get in the car! Now!
21:18:45 M. Nelson Lt. Thomas!
21:18:46 Lt. Thomas I'll be dog!
21:18:48 M. Nelson Lt. Thomas, I'm sitting here in this car, on my cell phone.
21:18:50 Corp. Dailey Get in the car.
21:18:51 M. Nelson This officer came up and put me in these cuffs for no reason.
21:18:52 Lt. Thomas What's the charge on him?
21:18:52 Corp. Dailey I don't have any charges on him.
21:18:55 M. Nelson I ain't resisted her for nothing.
21:18:58 Corp. Dailey He's just acting a fool.
21:18:59 M. Nelson You're lying officer.
21:19:00 M. Nelson Now listen ... Go over there and get my ID ... You're
 wrong!
21:19:00 Corp. Dailey I've got him ....
21:19:03 Corp. Dailey I drove by ... he's sitting there with his lights off... I can't
 see any....
21:19:04 M. Nelson I'm not resisting her! A citizen should be free to .........
21:19:05 Corp. Dailey Sit down in the car!
21:19:12 Lt. Thomas Sit down Captain. Sit down.
21:19:14 Corp. Dailey Sitting here with no lights on. Can't see anybody in the car. I
 turn back around, I come back, I pull up and I see him. He
 rolls down the window. "How you doing?" "I'm fine, how are
 you?"
21:19:26 Corp. Dailey "I saw the tags. Sir, who do you work for?" "What do you
 mean who do I work for? I ain't gotta tell you shit."

*1123
21:19:30 Corp. Dailey I get out. I said "You need to get out and put your hands on
 the car." "I want to know why you're back here." And that's
 what I've got ever since.
21:19:40 Lt. Thomas Hey, you better write this up good.
21:19:41 Corp. Dailey I'll write it up good. I don't have a problem with that.
21:19:44 Lt. Thomas What's the charges?
21:19:44 Corp. Dailey I don't have any charges on him Lieutenant. I cuffed him
 because I'm here by myself, and he will not cooperate with
 me.
21:19:50 Lt. Thomas You ain't see this man before tonight?
21:19:52 Corp. Dailey I ain't never seen him before in my life. Didn't know who he
 was till he said his name.
21:19:59 Lt. Thomas This is a retired Captain ... Nelson
21:20:00 Corp. Dailey Well, he said it but that don't give him a right to act like a
 fool. I don't care who he is.
21:20:04 M. Nelson I don't care who you are either. Cause you wrong.
21:20:08 Lt. Thomas Write the incident report.
21:20:08 Corp. Dailey I will.
21:20:09 M. Nelson Get me out of these cuffs or charge me and take me to jail.
21:20:16 Corp. Dailey You need to sit down.
21:20:16 Lt. Thomas What are the charges on him?
21:20:17 Corp. Dailey I already told you Lieutenant, I don't have any charges on
 him.
21:20:17 M. Nelson I know she don't.
21:20:19 Lt. Thomas Write that. Write the report.
21:20:20 Corp. Dailey I will write my report!
21:20:22 Lt. Thomas Okay, okay! Is the tape on?
21:20:24 Corp. Dailey It's been on ever since I got out.
21:20:25 M. Nelson She don't have any charges on me.
21:20:28 M. Nelson All she does have ... she pulled up here and she asked me
 who am I. I said "what for? Who do I work for?" I said "what
 for officer? What am I doing?" "Get out of the car." Put me
 on the car and started rapping me on my legs.
21:20:40 M. Nelson Now, you wrong officer.
21:20:41 Corp. Dailey No, Mr. Nelson. I am not wrong.
21:20:44 M. Nelson (unintelligible) my parking lights are on ... I'm not hiding
 anything!
21:20:47 Corp. Dailey You're sitting behind a closed business!

*1124
21:20:48 M. Nelson I'm Talking on the telephone ... was going right in to the
 Super 1!
21:20:52 Lt. Thomas Settle down Captain. Settle down. Settle down.
21:20:53 M. Nelson I'm going down to Super 1 to buy something!
21:20:53 Corp. Dailey If you don't answer my questions I don't know that do I?
21:20:56 M. Nelson I don't have to answer your fucking questions!
21:20:57 Lt. Thomas Settle down.
21:20:58 Corp. Dailey He's going to jail.
21:20:58 M. Nelson No, I ain't going no where. What's the charge?
21:21:00 Corp. Dailey He's going to jail.
21:21:01 M. Nelson What's the charge?
21:21:02 Corp. Dailey Disturbing the peace.
21:21:03 M. Nelson Whose peace?
21:21:04 Corp. Dailey Mine, and I've got the right..... you don't have the right to
 disturb mine.
21:22:00 M. Nelson I ought to ask for some medical attention the way that officer
 treated me.
21:22:04 Corp. Dailey You want me to call the Fire Department for you?
21:22:06 Unknown Officer Captain. Settle down.
21:22:08 Corp. Dailey I don't have a problem.
 (unintelligible conversation)
21:22:13 Lt. Thomas You aren't under arrest.
21:22:15 Corp. Dailey No, I need your ID.
21:22:14 Lt. Thomas Settle down.
21:22:15 M. Nelson Am I free to go?
21:22:18 M. Nelson Can I have a list of all these officers?
21:22:19 Corp. Dailey I need your ID.
21:22:20 M. Nelson Just like that? It's right there.
21:22:22 Corp. Dailey Get it!
21:22:23 M. Nelson I told you it was in the car.
21:22:24 Corp. Dailey Get it!
21:22:26 M. Nelson Who you ordering around like that officer?
21:22:27 Corp. Dailey You.
21:22:29 Lt. Thomas Settle down Dailey. Settle down.

*1125
21:22:33 M. Nelson And my money is over here on the ground. See it. Some of it
 may have blown away. I offered her my ID. I said "my ID is
 in my car. My driver's license is right here."
21:22:45 Corp. Dailey That's all I need is your driver's license Mr. Nelson.
21:22:45 M. Nelson No, you don't need nothing from me ma'am. No you don't
 need nothing.
21:22:48 Corp. Dailey He's fixing to go to jail for not cooperating.
21:22:51 M. Nelson What the hell! What you going to charge me with?
21:22:54 Corp. Dailey What's I just say!
21:22:55 M. Nelson You need a driver's license.
21:22:56 Corp. Dailey Yea, that's what I asked for.
21:22:58 M. Nelson For what? Because I violated a law? A traffic law?
21:23:00 Corp. Dailey No sir. Because I have the right to ask for your ID when your
 behavior.
21:23:03 M. Nelson And don't I have a right not to give it to you?
21:23:06 Corp. Dailey No sir, you don't. No sir you do not.
21:23:09 Corp. Dailey If your behavior is suspicious to me, I have the right to ask
 for your ID.
21:23:11 Lt. Thomas Settle down! Settle down. This is over with. This is over with.
 This is over with.
21:23:14 Lt. Thomas Captain, get in your car over here and go ahead. This is over
 with.
21:23:17 M. Nelson Look! I'm sitting here.
21:23:19 Lt. Thomas Captain, go ahead.
21:23:21 Corp. Dailey I need his ID if you want me to write a report.
21:23:22 Lt. Thomas That's Marshall Nelson. I'll give you everything on him.
21:23:23 (M. Nelson starts his vehicle)
21:23:31 Lt. Thomas His name is Marshall Nelson.
21:23:31 Corp. Dailey I know his name, I need his birth date and his address.
21:23:36 Lt. Thomas Birth date, 9, same as mine ... 1949 ... September, I don't
 know what day ... that's all you need. You got.
21:23:53 Corp. Dailey Here's his glasses ... you want to take them to him too?
21:23:56 Lt. Thomas Dailey, you know you're gonna have to write it good baby.
21:23:58 Corp. Dailey Look Lieutenant, if I was ......... (end of audio)

NOTES
[1] The petition wrongly referred to her as "Janet" when her correct name is "Janice."
[2] This award was not reduced by the percentage of fault apportioned to Nelson.
[3] Marshall Nelson served in the Shreveport Police Department from 1968 to 1991, obtaining the rank of captain. He served in various capacities including, but not limited to, patrol, narcotics, juvenile, and criminal investigations. He served on the Training Advisory Committee, as well as the Internal Affairs Department, ultimately becoming commander of Internal Affairs. Following his retirement, he was employed by the Caddo Parish Sheriff's Office for eight years, serving as an assistant chief in charge of operations. For the past three years Nelson has served as Chief of Police for Southern University at Shreveport.